# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of an Anonymous Member of the South
Carolina Bar, Respondent.

Appellate Case No. 2020-000476

Opinion No. 27973
Heard May 8, 2020 – Filed May 27, 2020

## ADMONISHMENT

John S. Nichols, Disciplinary Counsel, and Sabrina C.
Todd, Senior Assistant Disciplinary Counsel, both of
Columbia, for the Office of Disciplinary Counsel.

Respondent, *pro se*.

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (the Agreement) pursuant to Rule 21, RLDE, Rule 413, SCACR.  In the
Agreement, Respondent admits misconduct and consents to the imposition of a
public reprimand.  An investigative panel of the Commission on Lawyer Conduct
(the Commission) voted unanimously to recommend accepting the Agreement and
further recommended a public reprimand, issued in an anonymous opinion, be
imposed.

We agree with the spirit of the Commission's recommendation; however, the
sanction of a public reprimand requires *publicly* identifying the name of the
disciplined attorney.  In the instant matter, we find the imposition of a public
reprimand identifying Respondent by name is not warranted based on Respondent's
cooperation with ODC and the fact Respondent has never been sanctioned for

misconduct by any disciplinary authority.  Accordingly, we accept the Agreement and issue this anonymous admonition for the benefit of the Bar.  The facts, as set forth in the Agreement, are as follows.

## Facts

### *Morris Hardwick Schneider*

Morris Hardwick Schneider (MHS) was a multi-jurisdictional real estate closing and default services law firm based in Atlanta, Georgia.  In 2014, Nathan Hardwick was MHS's CEO and held a majority interest in the firm.  Hardwick oversaw corporate accounting for MHS and financial and accounting matters for the closing side of the practice from his office in Atlanta.  MHS had two other equity partners, Mark Wittstadt and Gerard Wittstadt, who were based in Maryland and headed the firm's default services practice.  None of MHS's equity partners were licensed to practice law in South Carolina.

In 2014, Respondent served as the managing attorney for MHS's Dunwoody, Georgia office but was also a non-equity partner in the firm and held the title of President of South Carolina Operations.  In that role, Respondent provided oversight and assistance with business development, marketing, communications, hiring, and training in the South Carolina offices located in Columbia and Greenville.  However, Respondent was not involved with or responsible for the day-to-day operations of either South Carolina office.

### *The NSF Reports*

In May 2014, SunTrust Bank reported it paid three wires that were presented against insufficient funds on one of MHS's South Carolina IOLTA accounts, leaving the account overdrawn by $65,752.69.  Approximately one month later, SunTrust reported the same account was overdrawn by $18,538.43 after the bank paid two additional wires that were presented against insufficient funds.

### *The Trust Account Shortfalls*

In July 2014, while ODC was investigating the insufficient funds reports, MHS and its title insurance company also began investigating the handling of the firm's accounts.  That internal investigation revealed several firm operating accounts and dozens of firm trust accounts suffered shortfalls due to internal misappropriation.

An early report estimated four of MHS's five South Carolina trust accounts were $648,937.40 short, and, companywide, firm operating and trust accounts were more than $29.4 million short.[1]

In South Carolina, the misappropriations occurred primarily through online transfers between firm trust accounts. More than $9 million in transfers in and out of the South Carolina trust accounts occurred during 2014 alone. According to MHS's internal records, the trust account against which insufficient funds items were presented was $448,170.36 short at the end of June 2014. On the same day, a second trust account was $320,668.10 short, and a third account was $140,060 short.

MHS's title insurance company ultimately funded $29,530,391 to cover trust account shortfalls throughout the firm. ODC reports it is unaware of any South Carolina clients who were harmed by the misappropriation of funds from South Carolina trust accounts.

## Law

A partner in a law firm is required to make reasonable efforts to ensure the law "firm has in effect measures giving reasonable assurances that all lawyers in the firm conform to the Rules of Professional Conduct." Rule 5.1(a), RPC, Rule 407, SCACR. Additionally, law firm partners are required to "make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance" that the conduct of non-attorney assistants is compatible with the attorneys' own professional obligations. Rule 5.3(a), RPC, Rule 407, SCACR.

---

[1] The misappropriated funds were eventually traced to Hardwick and Asha Maurya, head of MHS's accounting department and CFO of the firm's closing division. The United States Attorney's Office prosecuted both Hardwick and Maurya. Initial investigations indicated Maurya redirected firm and client funds to Hardwick and to third parties for Hardwick's benefit, but federal prosecutors discovered Maurya also misappropriated more than $900,000 for her personal benefit. Maurya pled guilty to one count of conspiracy to commit wire fraud and was sentenced to seven years' imprisonment and three years' supervised release. Following a jury trial, Hardwick was convicted of twenty-one counts of wire fraud, one count of conspiracy to commit wire fraud, and one count of making false statements to a federally insured financial institution. Hardwick was sentenced to fifteen years' imprisonment and six years' supervised release. Both Maurya and Hardwick were ordered to pay restitution, jointly and severally. Both have filed appeals.

Rule 417, SCACR, restricts access to South Carolina trust accounts in order to protect the funds contained in those accounts and those to whom the funds belong. Rule 2, Rule 417, SCACR. Only an attorney admitted to practice in South Carolina and individuals directly supervised by an attorney so admitted may have authority to sign checks or transfer funds from a client trust account. *Id.* Rule 417 also requires monthly reconciliation of all South Carolina trust accounts. Rule 1, Rule 417, SCACR.

In the instant matter, Respondent admits she failed to uphold her responsibilities as a partner in MHS. She failed to make reasonable efforts to ensure the firm's attorneys and non-attorney staff complied with Rule 417, SCACR, with regard to South Carolina trust accounts. Numerous people who had access to the South Carolina trust accounts were neither licensed to practice law in South Carolina nor directly supervised by an attorney who was, including several attorneys licensed in other jurisdictions and non-attorney staff who worked in the firm's accounting department in Atlanta. Respondent's misconduct enabled those with impermissible and unfettered access to misappropriate almost $30 million. Further, the misappropriations were allowed to continue undetected because MHS's non-attorney accounting staff were in charge of receiving the trust account bank statements and reconciling the accounts. Neither Respondent nor any other South Carolina licensed attorney reviewed the reports or supervised the reconciliation process as required by Rule 417, SCACR.

Accordingly, Respondent admits her conduct in this matter violated Rules 5.1(a) and 5.3(a), RPC, Rule 407, SCACR, and Rule 417, SCACR. Respondent also admits the allegations contained in the Agreement constitute grounds for discipline pursuant to Rule 7(a)(1), RLDE, Rule 413, SCACR (violating or attempting to violate the Rules of Professional Conduct).

## Conclusion

We find Respondent violated Rule 417, SCACR, and her violation constitutes grounds for discipline. Accordingly, we accept the Agreement and admonish Respondent for her misconduct.[2] We publish this admonishment in the "In re

---

[2] In accordance with the Agreement, Respondent shall pay the costs incurred by ODC and the Commission in the investigation and prosecution of this matter or enter into a reasonable payment plan with the Commission to pay the same within thirty (30) days of the date of this opinion. Respondent shall also complete the Legal Ethics and Practice Program Ethics School and Trust Account School within one (1) year of the date of this opinion.

Anonymous Member of the Bar" format so as to remind and caution members of the Bar who hold partner positions of their duty to reasonably ensure their firms have measures in effect providing reasonable assurances that all attorneys in the firms conform to the Rules of Professional Conduct and that the conduct of non-attorney assistants is compatible with the attorneys' own professional obligations. We further warn members of the Bar against allowing law firm leadership or staff located outside of South Carolina to have unfettered access and control over South Carolina client funds.

**ADMONISHMENT.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**